IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSE PINEDA, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-1036-K-BK |
| | § | |
| NATIONSTAR MORTGAGE, LLC, and | § | |
| AURORA LOAN SERVICES, LLC f/k/a | § | |
| AURORA LOAN SERVICES, INC., | § | |
|     Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3*, this case has been referred to the undersigned for pretrial management.  The Court now considers Defendant Nationstar Mortgage LLC's *Motion to Dismiss*, Doc. 14, and Defendant Aurora Loan Services, LLC's *Motion to Dismiss*, Doc. 16.  For the reasons that follow, it is recommended that the motions be **GRANTED IN PART**.

## I.  BACKGROUND[1]

This case stems from the foreclosure sale of Plaintiff's real property located at 1413 Douglas Drive, Garland, Texas 75041 (the "Property").  Doc. 9 at 2.  In July 2000, Plaintiff purchased the Property and executed a note payable to First Horizon Home Loan Corporation ("Note") and a deed of trust to secure payment of the Note ("Deed of Trust").  Doc. 9 at 3.  Plaintiff's mortgage was assigned to Defendant Aurora Loan Services, LLC.  Doc. 9 at 3.  Defendant Nationstar Mortgage, LLC is the loan servicer and agent for Aurora.  Doc. 9 at 3.

Plaintiff's monthly payments on the Note were initially $1,026.00, but after transfer to Aurora, Plaintiff's monthly payments were increased to $1,222.26.  Doc. 9 at 3.  Plaintiff paid

---

[1] In ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).  Thus, unless otherwise noted, the facts are taken from *Plaintiff's First Amended Complaint*, Doc. 9.

the higher monthly payments while contacting Nationstar on three occasions to request that the amount be corrected to the previous amount. Doc. 9 at 3. Each time, Plaintiff was told that the discrepancy would be investigated, but Plaintiff never heard anything further. Doc. 9 at 3. In July 2014, shortly after the payment increase, Plaintiff tendered payment in the amount of $1,131.75. Doc. 9 at 3. Defendants purportedly accepted this payment, but did not apply it to Plaintiff's account. Doc. 9 at 3. The next month, Plaintiff was informed by ACE Cash Express that his account had been closed and Defendants would not accept his payment. Doc. 9 at 4. Plaintiff contacted Nationstar to apprise it of his financial situation and asserts that Nationstar assured him it would work with him to modify his loan and even assigned a specialist to help him. Doc. 9 at 4.

On October 31, 2014, Plaintiff received notice of acceleration and notice of the substitute trustee's sale of the Property stating that the total amount required to pay off the loan was $87,425.93. Doc. 9 at 4, 13. Plaintiff avers that he never received a notice of default and intent to accelerate, and was never given the opportunity to cure his default prior to acceleration. Doc. 9 at 4. Plaintiff states that Nationstar told him it could reduce his monthly payments if Plaintiff produced a number of documents and explained why he fell behind on his payments. Doc. 9 at 4. Plaintiff asserts that he complied with this process and, in December 2014, called Nationstar and a representative assured him Nationstar was working to modify his loan. Doc. 9 at 4. However, during this process, the Property was listed for sale, and Nationstar did not return Plaintiff's calls to inquire about the listing. Doc. 9 at 4-5. On December 22, 2014, Plaintiff received a loan statement stating that the total amount due was $9,466.35 and it was due by January 1. Doc. 9 at 13. The same amount was included in a December 24, 2015, letter. Doc. 9 at 13. In January 2015, Plaintiff called again and was told his home was being sold and that he

2

would have to move out.  Doc. 9 at 5.  On January 6, 2015, Nationstar foreclosed under the deed

of trust, and executed a substitute trustee's deed for $92,362.09.  Doc. 9 at 5.  On March 19,

2015, Nationstar filed a petition for forcible detainer against Plaintiff.  Doc. 9 at 5.

      In his petition, Plaintiff brings claims for (1) violations of the Real Estate Settlement

Procedures Act ("RESPA"), (2) breach of contract, (3) violations of the Texas Debt Collection

Act ("TDCA"), (4) violations of the Truth in Lending Act ("TILA"), (5) unjust enrichment, and

(6) to quiet title.  Doc. 9 at 8-18.  Specifically, Plaintiff alleges that RESPA proscribed

Defendants from foreclosing on the Property because he submitted a complete loss mitigation

application during the pre-foreclosure review period or, in the alternative, at least 37 days before

foreclosure occurred.  Doc. 9 at 9-10.  Plaintiff asserts that Defendants breached the Deed of

Trust by not applying Plaintiff's July 2014 payment to his account and by failing to send him a

notice of default and intent to accelerate.  Doc. 9 at 10-11.  As to the TDCA, Plaintiff avers that

Defendants made false representations about modifying his loan, misrepresented the character

and extent of his debt by requiring different payment amounts after acceleration, misrepresented

the character and extent of his debt by changing his monthly payment amount, and threatened to

foreclose despite being prohibited from doing so by RESPA.  Doc. 9 at 12-15.  Plaintiff alleges

that his July 2014 payment was a periodic payment that should have been credited to his account

under the TILA.  Doc. 9 at 16.  Based on these unlawful acts, Plaintiff asserts that Defendants

were unjustly enriched.  Doc. 9 at 17-18.  Plaintiff requests injunctive relief in addition to money

damages.  Doc. 9 at 19-20.

Originally filed in state court, Defendants removed the case to this Court on April 3, 2015.  Doc. 1.  Both Nationstar and Aurora filed their motions to dismiss in May 2015.[2]  Doc. 15; Doc. 16.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege enough facts to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To overcome a Rule 12(b)(6) motion, a plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial."  *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted).  Moreover, the complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555.  When considering a Rule 121(b)(6) motion, a court may consider documents outside the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims.  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

---

[2]  Because Defendants' briefs in support of their motions to dismiss are substantively identical, the Court will only cite to the first filed, Doc. 15.

### III. DISCUSSION

#### A.  RESPA Violation Claims

Defendants argue that Plaintiff has not stated a claim for a RESPA violation because he admits that Nationstar unequivocally told him the Property would proceed to foreclosure sale and because he did not submit a completed loss mitigation application.  Doc. 15 at 8-9.  Specifically, Defendants contend that Nationstar's statement in January 2015, when Plaintiff called to inquire why the Property was listed for sale, that the Property would be sold clearly indicated that Plaintiff's loan modification application was not under review prior to foreclosure.  Doc. 15 at 8. Defendants maintain that Plaintiff admits he was "gathering documents" at the time, and, thus, he has not pleaded that he submitted a *complete* loss mitigation application as contemplated by RESPA.  Doc. 15 at 9.  Plaintiff responds that whether or not Nationstar orally informed him that the Property was set for foreclosure sale is irrelevant to whether it violated RESPA, as RESPA disallows referral for foreclosure if a complete loss mitigation application was submitted in the pre-foreclosure review period.  Doc. 12 at 12-13.  Plaintiff contends that Defendants' argument about "gathering documents" misreads his complaint and takes the phrase out of context.  Doc. 20 at 13.

A mortgage servicer cannot refer a borrower's home to foreclosure if: (1) a complete loss mitigation application was submitted in the pre-foreclosure period; and (2) the servicer did not send notice of a borrower's ineligibility for loss mitigation options, the borrower did not reject the servicer's offer, or the borrower fails to perform under the loss mitigation option.  12 C.F.R. § 1024.41(f)(2).  Here, Plaintiff is correct that it does not matter whether Nationstar rejected Plaintiff's application just prior to foreclosure because the regulations disallow referral for foreclosure during the pendency of the application.  *Id.*  Plaintiff clearly alleges that he found out

the Property was referred for foreclosure before Nationstar orally informed him that the Property would indeed be sold. Doc. 9 at 4-5. Thus, Defendants' argument fails on this ground.

As to whether the application was complete, Plaintiff alleges that "he was in the pre-foreclosure review period when he sent in his loan modification on or about August of 2014," and that he "complied with this [loan modification] process and provided Nationstar with the required documents," which included "pay stubs, old tax filings, and a statement in writing explaining why he fell behind on his payments." Doc. 9 at 4, 9. While Defendants are correct that it is the servicer, not the borrower, who determines whether a loss mitigation application is complete, see 12 C.F.R. § 1024.41(b), they fail to state exactly what Nationstar, as servicer, required for a complete application or otherwise give the Court any basis to conclude that Plaintiff's allegation is incorrect. Furthermore, Defendants' argument that Plaintiff was "gathering documents" and thus had not compiled a complete application is contrary to Plaintiff's explicit allegations in his complaint. As the Court must accept Plaintiff's well-pled allegations as true at this stage, Defendants' argument that Plaintiff failed to state a claim for RESPA violations fails.

### B. TDCA Claims

Plaintiff asserts claims under three provisions of the TDCA. Section 392.304 of the TDCA provides, in relevant part, that "a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: . . . [1] misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or government proceeding; [and 2] using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." TEX. FIN. CODE § 392.304(a)(8), (19). Section 392.301 provides that "a debt collector may not use threats,

coercion, or attempts to coerce," which includes "threatening to take an action prohibited by law." TEX. FIN. CODE §392.301(a)(8).

### 1.  Section 392.304(a)(19)

Plaintiff alleges that Defendants fraudulently, deceptively, or misleadingly used false representations and deceptive means to obtain "vast amounts of information of information about Plaintiff," under the pretext of a loan modification and without any intention to modify the loan. Doc. 9 at 13.  Defendants argue this claim should be dismissed because Plaintiff merely alleges that Nationstar collected information from him -- a necessary part of any loan application or modification process -- and the application was denied.  Doc. 15 at 11.  Plaintiff responds that Defendants obtained vast amounts of personal and financial information from him under their representation that they "would work with [Plaintiff] to modify his loan" while also listing Plaintiff's home for sale, which satisfies the statute.  Doc. 20 at 16-17.  Defendants reply that Plaintiff focuses solely on Nationstar's handling of the loan modification, and that statements regarding a modification are insufficient to state a claim under this section.  Doc. 23 at 6 (citing *Thompson v. Bank of Am. N.A.*, 783 F.3d 1022, 1026 (5th Cir. 2015)).

The court of appeals in *Thompson* held that "communications in connection with the renegotiation of a loan do not concern the collection of a debt but, instead, relate to its *modification*."  *Thompson*, 783 F.3d at 1026 (emphasis in original).  In this case, however, Plaintiff's allegations strike at the *information* obtained by Defendants, not any attempts to "collect a debt" that are usually at issue in this "catchall" provision.  *See id.*  Thus, *Thompson* and other cases holding that loan modification has nothing to do with debt collection are inapposite.  Indeed, in the Court's review, there were no cases from this district discussing a claim under this subsection as it relates to a defendant solely obtaining information from the

plaintiff.  By its plain meaning, Plaintiff has clearly stated a claim as he has alleged that
Defendants obtained his information for loan modification and told him they would work with
him but instead foreclosed on his home without notice.  *See Jackson v. Wells Fargo Bank, N.A.,
No. 4:12-CV-0524, 2013 WL 4414862 at \*6 (E.D. Tex. Aug. 14, 2013)* (finding that Plaintiff's
section 392.304(a)(19) claim survived dismissal under Rule 12(b)(6) where Plaintiff alleged that,
among other misrepresentations, the mortgage company misrepresented the amount Plaintiff
owed and caused plaintiff to submit financial, asset, and income information in pursuit of loan
modifications that were ultimately denied).  Accordingly, the Court finds that Plaintiff has met
the minimum requirements for stating a claim under this subsection.

### 2. 392.304(a)(8)

In support of this claim, Plaintiff alleges that Defendants misrepresented the character,
extent, and amount of his debt in two ways: (1) stating that the total payment due on the loan was
$9466.35 after declaring that the loan had been accelerated months prior; and (2) changing
Plaintiff's monthly payments from $1,026 to $1,222.26.  Doc. 9 at 13-14.  Defendants argue that
the conflicting amounts are "obviously different representations about different facts -- a loan
payoff and an amount due to bring the loan current."  Doc. 15 at 10.  Defendants also contend
that the Deed of Trust allows for Plaintiff's loan payment to fluctuate based on escrow analyses.
Doc. 15 at 10.  Plaintiff responds that Defendant's statement that less than the entire loan balance
was due made after it had allegedly accelerated the note was a clear misrepresentation as to the
character, extent, and amount of Plaintiff's debt.  Doc. 20 at 15.  Plaintiff also maintains that the
loan payment fluctuations based on escrow analyses did not grant Defendants carte blanche to
simply change his loan payment at their whim, and that any escrow changes were required to be
properly disclosed to Plaintiff.  Doc. 20 at 16.  Defendants reply that the Deed of Trust allows

the borrower to reinstate after acceleration by bringing the loan current, and therefore, Plaintiff cannot to allege any facts that would plausibly suggest that Nationstar made an affirmative false or misleading statement.  Doc. 23 at 4.

The Deed of Trust, by its own terms, renders Plaintiff's claims under this section meritless.  First, the Deed of Trust allows for the borrower to reinstate the loan after acceleration by tendering in a "lump sum all amounts required" to bring the borrower's account current.  Doc. 1-2 at 27, ¶ 10.  The Deed of Trust also contemplates a variable monthly payment by allowing for the monthly payment to change according to taxes and insurance that may vary.  Doc. 1-2 at 24-25, ¶ 2.  Thus, it cannot be said that Defendants misrepresented either the amount due after the Note was accelerated or the amount due each month by changing his monthly payment.  Thus, Defendant is therefore entitled to dismissal on this claim.

### 3.  392.301(a)(8)

Plaintiff alleges that Defendants violated RESPA when they threatened action prohibited by law, to-wit: foreclosure where the contractual authority to foreclose is inapposite to statutory authority to foreclose.  Doc. 9 at 14.  Defendants argue that this claim should be dismissed because the foreclosure itself cannot be a threat to take an action prohibited by law.  Doc. 15 at 9-10.  Rather, Defendants maintain that nothing in the TDCA prevents the actual foreclosure of the Property, which is what they surmise Plaintiff is actually alleging.  Doc. 15 at 9.  Defendants construe Plaintiff's complaint to make no allegations that the notice of foreclosure was a threat to take an action prohibited by law when it was made.  Doc. 15 at 10.  Defendants contend that, regardless, the TDCA specifically excludes from violation of this section threats to "exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings."  Doc. 15 at 9-10 (citing TEX. FIN. CODE §392.301(b)(3)).  Plaintiff responds that

he actually pleaded that Defendants threatened to and did pursue foreclosure of the Property, which was a violation of RESPA. Doc. 20 at 14. Defendants reply that Plaintiff failed to allege a specific threat. Doc. 23 at 4 (citing *Gipson v. Deutsche Bank Nat'l Trust Co.*, No. 3:13-CV-4820, 2015 WL 2069583 (N.D. Tex. May 4, 2015) (holding claims for violation of this section should be dismissed if a plaintiff does not allege facts explaining how defendants use threats or coercion in connection with foreclosing)).

Unlike Defendants, the Court reads the complaint to aver that the notice of foreclosure, allegedly received during a period proscribed by RESPA, constituted a threat in violation of a statute. Doc. 9 at 14. That notwithstanding, Defendants correctly state that a debt collector is not prevented from "threatening to institute civil lawsuits or other judicial proceedings to collect a consumer debt" or from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." Tex. Fin. Code § 392.301(b). Because Defendants' threat to foreclose was based on a contractual right, it is explicitly exempted from Section 392.301(a)(8)'s prohibition on threats and coercion. In other words, while the fact that a loan modification application was under review may be relevant to Defendants' alleged RESPA violations, it is of no moment regarding Plaintiff's claim that Defendants' threats of foreclosure violated the TDCA. Accordingly, Plaintiff has failed to state a claim under this section of the TDCA and Defendant is entitled to dismissal.

## C. Breach of Contract Claims

Defendants contend that Plaintiff's breach of contract action must be dismissed since Plaintiff first breached the contract by failing to timely pay all amounts due under the contract. Doc. 15 at 12. In his response, Plaintiff details three alleged breaches by Defendants but does not respond to this argument. Under Texas law, to plead a claim for breach of contract, a

plaintiff must allege: (1) the existence of a valid contract; (2) that he performed or tendered performance under the contract; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages as a result of the breach. *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003). In his amended complaint, Plaintiff admits that on or about July 30, 2014, he tendered payment to Defendants for $1,131.75, an amount less than his monthly loan payment. Doc. 9 at 3. Regardless of how this payment was to be apportioned by Defendants, Plaintiff does not contest that it was less than the amount required. Accordingly, Plaintiff is unable to sustain a cause of action for breach of contract because he cannot show he tendered performance thereunder.

### D. TILA Claims

Plaintiff alleges that Defendants accepted his July 30, 2014 payment but failed to apply it to his account, in violation of TILA regulations on periodic payments, and failed to disclose that they did not apply the payment, in violation of TILA regulations on partial payments. Doc. 9 at 15-16. Defendants argue that Plaintiff cannot recover on this basis because he does not allege a specific charge or reporting of negative credit information resulting from their alleged failure to credit a periodic payment to his account. Doc. 15 at 12. Defendants also contend that Plaintiff's July 2014 partial payment "would properly be held in unapplied funds until such other funds were tendered to bring the loan current. Such a practice is in strict compliance with the loan documents and no basis for any cause of action." Doc. 15 at 12. Plaintiff responds that Defendants' statement admits violation of the TILA because regulations require that unapplied funds be treated as a periodic payment on accumulation of sufficient funds to cover the same. Doc. 20 at 20. Defendants reply that their motion does not actually state that Plaintiff's July

2014 payment was held in unapplied funds -- only that it would be a fair reading of the terms of the Deed of Trust to do so.  Doc. 23 at 8.

A periodic payment "is an amount sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle."  12 C.F.R. 1026.36(c)(1)(i).  "No servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information, or except as provided in (c)(1)(iii) of this section."  *Id.*  In his amended complaint, Plaintiff stated that in July 2014, he was unable to continue working and only "tendered payment for $1,131.75 to Defendants" when the monthly payments were $1,222.26.  Doc. 9 at 3.  Thus, this payment does not meet the definition of a periodic payment in Section 1026.36(c)(1)(i).

As to partial payments, "any servicer that retains a partial payment, meaning any payment less than a periodic payment, in a suspense or unapplied funds account shall . . . [d]isclose to the consumer the total amount of funds held in such suspense or unapplied funds account on the periodic statement on the periodic statement . . . [and] on accumulation of sufficient funds to cover a periodic payment in any suspense or unapplied funds account, treat such funds as a periodic payment received."  12 C.F.R. 1026.36(c)(1)(ii).  Defendants' arguments on this claim are unavailing.  They point to no decisive basis for the Court to conclude that they complied with the TILA's requirement to apply partial payments as periodic payments as sufficient funds allow.  Thus, the Court finds Plaintiff has sufficiently stated a claim under this section of the TILA under Section 1026.36(c)(1)(ii), but failed to state a claim under Section 1026.36(c)(1)(i).

### E.   Unjust Enrichment

Defendants argue that Plaintiff's unjust enrichment claims should be dismissed because unjust enrichment is not an independent cause of action, and is unavailable where a contract addresses the disputed matter, as is the case with the Deed of Trust here.   Doc. 15 at 14-15. Plaintiff counters that unjust enrichment claims can be presented as an alternative theory of recovery to a breach of contract claim.   Doc. 20 at 21.   Defendant correctly states the law. Unjust enrichment allows recovery "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. Corpus Christi,* *832 S.W.2d 39, 41 (Tex. 1992).*   However, there can be no recovery based on this theory "when the same subject matter is covered by an express contract." *Baxter v. PNC Bank N.A.,* No. 12-51181, 2013 WL 5356894 at *3 n.2 (5th Cir. Sept. 26, 2013) (citing *Fortune Prod. Co. v.* *Conoco Inc.,* 52 S.W.3d 671, 684 (Tex. 2000)).   Because the Deed of Trust governs the relationship between the parties here and the disputed conduct, there can be no recovery for unjust enrichment, and Plaintiff's claim fails as a matter of law.

### F.   Quiet Title Action

Defendants argue that Plaintiff admitted he voluntarily entered into the loan transaction, defaulted, and made no complaint about the validity of the deed of trust itself.   Doc. 15 at 15. Plaintiff responds that his quiet title claim is premised on the strength of his own title, which is that he was and is the rightful owner of the Property, as it is his homestead.   Doc. 20 at 23.   To prevail on a suit to quiet title, a plaintiff must show that: (1) he has an interest in a specific property, (2) title to the property is affected by a claim from the defendant, and (3) the defendant's claim, although facially valid, is invalid or unenforceable.   *Sadler v. Duvall,* 815 S.W.2d 285, 293 n.2 (Tex. App.—Texarkana 1991).   In a quiet title action, the plaintiff must

recover on the strength of his own title, not on the weakness of the defendant's title. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001). Plaintiff's only basis for the strength of his title here is the conclusory statement that he is the owner and the Property is his homestead. Thus, Plaintiff's quiet title claim is premised on the lawfulness of Defendants' foreclosure of the Property, which is insufficient to state a claim.

### G. Injunctive and Declaratory Relief

Because the undersigned has concluded that some of Plaintiff's claims should survive Defendants' motion, it is recommended that Plaintiff's claims for injunctive and declaratory relief survive as well.

### H. Accounting

Defendants argue that there is no unusual circumstance warranting Plaintiff's request for an accounting of all transactions on his mortgage loan. Doc. 15 at 20. Plaintiff responds that that the alleged discrepancy as to his loan payments increasing and the alleged discrepancy as to his July 2014 payment create a situation in which an accounting is proper. Doc. 20 at 25.

To be entitled to an accounting, a plaintiff usually must have a contractual or fiduciary relationship with the party from which the accounting is sought. *Hunt Oil Co. v. Moore*, 656 S.W.2d 634, 642 (Tex. App.—Tyler 1983). Further, an "equitable accounting is proper when the facts and accounts presented are so complex adequate relief may not be obtained at law." *Hutchings v. Chevron U.S.A., Inc.*, 862 S.W.2d 752, 762 (Tex. App.—El Paso 1993) (citing *Richardson v. First Nat'l Life Ins. Co.*, 419 S.W.2d 836, 838 (Tex. 1967)). When a party can obtain adequate legal relief through the use of standard discovery procedures, such as requests for production and interrogatories, a trial court does not err in not ordering an accounting.

At this early stage of the case, the Court cannot conclude that as a matter of law, Plaintiff is not entitled to an accounting.  According, Defendant's motion for dismissal for failure to state a claim fails as to this request for relief.

## IV. LEAVE TO AMEND

Ordinarily, Plaintiff should be granted leave to amend his complaint prior to dismissal of his claims.  Here, however, Plaintiff is represented by counsel and has already filed an amended complaint.  Moreover, as detailed herein, Plaintiff's claims subject to dismissal cannot be saved by additional factual enhancement and/or fail as a matter of law.  Thus, granting leave to amend these claims would be futile.

## V.   CONCLUSION

For the foregoing reasons, it is recommended that Nationstar's *Motion to Dismiss*, Doc. 14, and Aurora's *Motion to Dismiss*, Doc. 16, be **GRANTED ONLY IN PART**.  Specifically, the Court recommends dismissal with prejudice of Plaintiff's claims under Section 392.304(a)(8) of the TDCA (only on the basis of his monthly payment increasing), Section 392.301(a)(8) of the TDCA, Section 1026.36(c)(1)(i) of the TILA, as well as Plaintiff's claims for unjust enrichment and to quiet title.  Defendants' motions should be **DENIED** as to Plaintiff's remaining claims.

September 29, 2015.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE